**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SANTO M. ISLAAM, | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-296** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| CO KUBICKI, <u>et</u> <u>al.</u>, | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

On December 13, 2019, <u>pro se</u> Plaintiff Santo M. Islaam ("Plaintiff"), who is presently

confined at the United States Penitentiary McCreary ("USP McCreary") in Pine Knot, Kentucky

("USP McCreary"), initiated the above-captioned action by filing a complaint pursuant to <u>Bivens</u>

<u>v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), in the

United States District Court for the District of New Jersey.  (Doc. No. 1.)  Plaintiff also filed a

motion to appoint counsel.  (Doc. No. 1-2.)  In an Order dated February 14, 2020, that court

transferred the action to this Court for further proceedings because Plaintiff's complaint concerns

events that occurred while he was incarcerated at USP Canaan, which is located within this

district.  (Doc. No. 4.)  In an administrative Order dated February 19, 2020, the Court directed

Plaintiff either to pay the requisite filing fee or file a completed motion for leave to proceed <u>in</u>

<u>forma pauperis</u> within thirty (30) days.  (Doc. No. 8.)  On March 2, 2020, the Court received

Plaintiff's completed motion for leave to proceed <u>in forma pauperis</u> (Doc. No. 9) and prisoner

trust fund account statement (Doc. No. 10).  Pursuant to the Prison Litigation Reform Act of

1995 ("PLRA"),[1] the Court will perform its mandatory screening of Plaintiff's complaint.  For

---

[1] <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

the reasons set forth below, the Court will grant Plaintiff's motion for leave to proceed <u>in forma pauperis</u>, dismiss his complaint with leave to amend, and deny his motion to appoint counsel without prejudice.

## I.     BACKGROUND

In his complaint, Plaintiff names CO Kubicki ("Kubicki"), CO Fuller ("Fuller"), Property Officer Stein ("Stein"), Lt. Bodge ("Bodge"), and Warden E. Bradley ("Bradley") as Defendants in this matter.  (Doc. No. 1 at 1.)  Plaintiff alleges that on February 23, 2019, while he was incarcerated at USP Canaan, Defendant Kubicki had him "falsely place[d] in detention under a false pretense."  (<u>Id.</u> at 7.)  According to Plaintiff, Defendant Kubicki told him that Plaintiff's "'people didn't want [him] on the pound.'"  (<u>Id.</u>)  Plaintiff maintains that he was in detention for seven (7) months "allegedly pending a[] SIS investigation which was bias[ed] and dragged out [deliberately] by [Defendant] Bodge."  (<u>Id.</u>)

On March 20, 2019, Lieutenant Rosler told Plaintiff that he was in the Special Housing Unit ("SHU") because other inmates were scared of him.  (<u>Id.</u> at 7-8.)  However, Plaintiff maintains that in June of 2019, Defendant Bodge told him that he was in the SHU because someone had threatened Plaintiff's life.  (<u>Id.</u> at 8.)  Plaintiff avers that during his time in the SHU, he was denied access to the courts and recreation.  (<u>Id.</u>)  Plaintiff alleges that Defendant Fuller took from his property two (2) manila envelopes containing a "[civil action] writ" that had already been prepared.  (<u>Id.</u>)  Plaintiff states that his legal property was never returned, even when he was transferred to another institution.  (<u>Id.</u>)  He maintains that Defendant Stein refused to give him an inventory slip of his property.  (<u>Id.</u>)  According to Plaintiff, Defendant Bradley "finally decided to respond to [his administrative remedy], saying that [Plaintiff] had [made] a threat to staff."  (<u>Id.</u>)  Based on the foregoing, Plaintiff appears to assert that his First, Fifth, and

Eighth Amendment rights were violated.  (Id. at 8-9.)  As relief, he requests damages as well as an "unbias[ed] and formal investigation of everyone involved."  (Id.)

## II.    LEGAL STANDARD

### A.    Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint

pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however

inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

**B.      Bivens Action**

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992). To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

**III.      DISCUSSION**

**A.      Plaintiff's Complaint**

**1.      Claims Against Defendant Bradley**

It appears that Plaintiff attempts to hold Defendant Bradley liable by virtue of his participation in after-the-fact review of Plaintiff's grievances and administrative remedies concerning his placement in the SHU. Inmates, however, do not have a constitutional right to prison grievance procedures. See Lions v. Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded

inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action). Consequently, any allegations asserted by Plaintiff in an attempt to establish liability against Defendant Bradley based solely upon the substance of his respective responses to Plaintiff's grievances or administrative remedies do not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (providing that the involvement in post-incident grievance process is not a basis for liability); see also Brooks, 167 F. App'x at 925; Ramos, 2006 WL 2129148, at *3.

It also appears that Plaintiff attempts to assert claims against Defendant Bradley based upon his respective supervisory position. Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." See Iqbal, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability

applicable to claims brought pursuant to <u>Bivens</u> and 42 U.S.C. § 1983: (1) "a supervisor may be personally liable under § 1983 [and <u>Bivens</u>] if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 and <u>Bivens</u> "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" <u>See</u> <u>A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." <u>See</u> <u>Merring v. City of Carbondale</u>, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the instant case, Plaintiff's complaint fails to set forth a plausible supervisory liability claim against Defendant Bradley. Plaintiff avers that Defendant Bradley told him that the Bureau of Prisons "has its [policies] and Canaan has its own policy." (Doc. No. 1 at 6.) However, to assert a plausible claim, the plaintiff "must identify [the] . . . policy, and specify what exactly that . . . policy was" to satisfy the pleading standard. <u>See</u> <u>McTernan v. City of York, Pa.</u>, 564 F.3d 636, 658 (3d Cir. 2009). In the instant case, Plaintiff fails to identify the policy that allegedly caused the violations of his constitutional rights. Accordingly, he has failed to set forth a plausible claim for relief against Defendant Bradley at this time.

## 2. First Amendment Access to the Courts Claim

Plaintiff alleges that Defendants Fuller and Stein violated his right to access the courts by confiscating his copies of a "[civil action] writ already prepared" and not returning them to him. (Doc. No. 1 at 8.)  It is well-settled that "prisoners have a constitutional right of access to the courts."  See Bounds v. Smith, 430 U.S. 817, 821 (1977).  "In order to state a claim of the denial of access to the courts, a prisoner such as [Plaintiff] must allege that his efforts to pursue a legal claim were hindered and he suffered an actual injury."  Ross v. Clerk of Courts of Court of Common Pleas of Phila., 726 F. App'x 864, 865 (3d Cir. 2018) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)).  "[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement."  Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).  A complaint raising an access to the courts claim "must describe the underlying claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  See Christopher v. Harbury, 536 U.S. 403, 416-18 (2002).

Plaintiff's complaint, as pled, fails to set forth a plausible access to the courts claim. Plaintiff alleges that Defendants Fuller and Stein confiscated his copies of a "[civil action] writ" but fails to describe the claims he set forth in that document.  See Heath v. Link, 787 F. App'x 133, 136 (3d Cir. 2019) (concluding same regarding legal materials).  Moreover, Plaintiff has not alleged any facts about the merits of his underlying claims, let alone allege that he suffered an actual injury.  See Presbury v. Wetzel, 789 F. App'x 294, 295 (3d Cir. 2020) (concluding same). Accordingly, Plaintiff's access to the courts claim is subject to dismissal.

### 3. Fifth Amendment Due Process Claim

Plaintiff also suggests that his seven (7)-month placement in the SHU violated his Fifth Amendment due process rights. Inmates, however, have "no legitimate statutory or constitutional entitlement" to any particular custodial classification. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). The Due Process Clause protects liberty interests created by the laws or regulations of a state. See Sandin v. Conner, 515 U.S. 472, 483 (1995). These interests, however, "will be generally limited to freedom from restraint" which imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See id. at 484. When deciding whether a protected liberty interest exists, courts "consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." See Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (quoting Sandin, 515 U.S. at 486).

Plaintiff's complaint, as pled, does not lead to a plausible inference that his placement in USP Canaan's SHU for seven (7) months imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." See Sandin, 515 U.S. at 484. Thus, Plaintiff has not implicated a protected liberty interest. See Robinson v. Norwood, 535 F. App'x 81, 83-84 (3d Cir. 2013) (affirming that the inmate-plaintiff's placement in the SHU at USP Lewisburg did not violate his due process rights); Wilson v. Hogsten, 269 F. App'x 193, 195 (3d Cir. 2008) (concluding that the inmate-plaintiff's complaint that he was kept in the SHU during a ten (10)-month internal investigation was not a cognizable constitutional claim). Accordingly, Plaintiff's Fifth Amendment due process claim regarding his placement in the SHU is subject to dismissal.

#### 4.    Eighth Amendment Denial of Recreation Claim

Plaintiff also appears to assert that his Eighth Amendment rights were violated because he was denied recreation during his incarceration in the SHU.  (Doc. No. 1 at 8.)  The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties upon prison officials to provide prisoners with the basic necessities of life, including food, clothing, shelter, sanitation, medical care, and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  It is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs.  See Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 417-18 (3d Cir. 2000).  To allege a deprivation of basic human needs, an inmate must allege a sufficiently serious objective deprivation and that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference.  See Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

As an initial matter, Plaintiff has not set forth a plausible claim concerning the denial of recreation because he fails to set forth facts suggesting that the named Defendants were personally involved in such denial.  See Rode, 845 F.2d at 1207 (noting that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs").  Moreover, while exercise is "one of the basic human necessities protected by the Eighth Amendment," see LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993), a temporary denial of exercise without medical effects is not a substantial deprivation.  See Rodriguez v. Thomas, 299 F. Supp. 3d 618, 639 (M.D. Pa. 2018); see also French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985) (noting that lack of exercise rises to a constitutional violation only if the deprivation is such that "movement is denied [to the extent that] muscles are allowed to atrophy [and] the health of the individual is threatened").  In the instant case, Plaintiff asserts that he received no recreation while housed in

the SHU for seven (7) months but fails to allege that he suffered any adverse medical effects from the alleged deprivation of recreation. Consequently, without more, Plaintiff's claim regarding the denial of recreation cannot proceed at this time.

### B. Motion to Appoint Counsel

As noted <u>supra</u>, Plaintiff has also filed a motion to appoint counsel. (Doc. No. 1-2.) Plaintiff maintains that the appointment of counsel is warranted because he has a tenth-grade education and is "not experienced or educated in the matter of law." (<u>Id.</u> at 3.) Plaintiff avers that his incarceration limits his ability to "collect/gather information that would be pertinent and crucial to [his] case." (<u>Id.</u>) Although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). <u>See</u> <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 498 (3d Cir. 2002). In <u>Tabron v. Grace</u>, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants. <u>See</u> <u>Tabron v. Grace</u>, 6 F.3d 147, 155-57 (3d Cir. 1993). Such factors include: the plaintiff's ability to present his case; the complexity of the legal and discovery issues in the case; the amount of factual investigation that will be required; the necessity of expert witnesses; and whether "witness credibility is a key issue." <u>See</u> <u>id.</u> Additionally, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." <u>See</u> <u>Montgomery</u>, 294 F.3d at 498-99 (citing <u>Tabron</u>, 6 F.3d at 155). Finally, "[t]he plaintiff's ability to present a case is '[p]erhaps the most significant' consideration and depends on factors such as 'the plaintiff's education, literacy, prior work experience, and prior litigation experience . . . along with a plaintiff's ability to understand English . . . [and] the restraints

placed upon a prisoner plaintiff by confinement.'"  See Nunuez v. Wetz, No. 14-cv-0727, 2017 WL 4698092, at *1 (M.D. Pa. Oct. 19, 2017) (quoting Montgomery, 294 F.3d at 501).

The Court concludes that the Tabron factors do not warrant appointing counsel at this time.  Plaintiff has the apparent ability to read, write, and understand English, as well as the ability to litigate this action pro se, as demonstrated by his filing of a complaint and motion for leave to proceed in forma pauperis.  Accordingly, there is no indication that Plaintiff "presently suffers from any impediment unusual to other pro se litigants that appear before this Court."  See Segura v. Wetzel, No. 17-0931, 2017 WL 3495184, at *2 (M.D. Pa. Aug. 14, 2017).  Moreover, the legal issues in this case are not complex, and this Court's duty to construe pro se pleadings liberally, see Riley v. Jeffes, 77 F.2d 143, 147-48 (3d Cir. 1985), coupled with Plaintiff's apparent ability to litigate this action, militates against the appointment of counsel at this time. In the event that future proceedings demonstrate the need for counsel, however, the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

## C. Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.  The Court must also determine whether a

proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief may be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court will permit Plaintiff to file an amended complaint that corrects the deficiencies identified herein.  Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that he claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 9) and dismiss Plaintiff's complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court will afford Plaintiff thirty (30) days from the date of the Order accompanying this Memorandum in which to file an amended complaint consistent with the Court's discussion herein.  Plaintiff's motion to appoint counsel (Doc. No. 1-2) will be denied without prejudice.  An appropriate Order follows.