# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANTO M. ISLAAM, | : | |
|     Plaintiff | : | |
| | : | No. 1:20-cv-00296 |
| v. | : | |
| | : | (Judge Kane) |
| CO KUBICKI, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court are pro se Plaintiff Santo M. Islaam ("Plaintiff")'s amended complaint (Doc. No. 15) filed pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and his motion to appoint counsel (Doc. No. 16). For the reasons set forth below, the Court will dismiss the amended complaint without further leave to amend, deny the motion to appoint counsel, and direct the Clerk of Court to close the above-captioned action.

## I. BACKGROUND

On December 13, 2019, Plaintiff, who is presently confined at the United States Penitentiary McCreary in Pine Knot, Kentucky ("USP McCreary"), initiated the above-captioned action by filing a complaint pursuant to Bivens against Defendants CO Kubicki ("Kubicki"), CO Fuller ("Fuller"), Property Officer Stein ("Stein"), Lt. Bodge ("Bodge"), and Warden E. Bradley ("Bradley") in the United States District Court for the District of New Jersey. (Doc. No. 1.) Plaintiff also filed a motion to appoint counsel. (Doc. No. 1-2.) In an Order dated February 14, 2020, that court transferred the action to this Court for further proceedings because Plaintiff's complaint concerns events that occurred while he was incarcerated at USP Canaan, which is located within this district. (Doc. No. 4.)

In his original complaint, Plaintiff alleged that on February 23, 2019, while he was incarcerated at USP Canaan, Defendant Kubicki had him "falsely place[d] in detention under a false pretense." (Doc. No. 1 at 7.) According to Plaintiff, Defendant Kubicki told him that Plaintiff's "people didn't want [him] on the pound." (Id.) (internal quotation marks omitted). Plaintiff maintained that he was in detention for seven (7) months "allegedly pending a[] SIS investigation which was bias[ed] and dragged out [deliberately] by [Defendant] Bodge." (Id.)

On March 20, 2019, Lieutenant Rosler told Plaintiff that he was in the Special Housing Unit ("SHU") because other inmates feared him. (Id. at 7-8.) However, Plaintiff maintained that in June of 2019, Defendant Bodge told him that he was in the SHU because someone had threatened Plaintiff's life. (Id. at 8.) Plaintiff averred that during his time in the SHU, he was denied access to the courts and recreation. (Id.) Plaintiff alleged that Defendant Fuller took from his property two (2) manila envelopes containing a "[civil action] writ" that had already been prepared. (Id.) Plaintiff stated that his legal property was never returned, even when he was transferred to another institution. (Id.) He maintained that Defendant Stein refused to give him an inventory slip of his property. (Id.) According to Plaintiff, Defendant Bradley "finally decided to respond to [his administrative remedy], saying that [Plaintiff] had [made] a threat to staff." (Id.) Based on the foregoing, Plaintiff appeared to assert that his First, Fifth, and Eighth Amendment rights were violated. (Id. at 8-9.) As relief, he requested damages, as well as an "unbias[ed] and formal investigation of everyone involved." (Id.)

In a Memorandum and Order dated March 5, 2020, the Court granted Plaintiff leave to proceed in forma pauperis and dismissed Plaintiff's complaint for failure to state a claim upon which relief may be granted. (Doc. Nos. 13, 14.) Specifically, the Court concluded that: (1) Plaintiff could not maintain claims against Defendant Bradley based upon his responses to

Plaintiff's grievances or administrative remedies; (2) Plaintiff failed to set forth a plausible supervisory liability claim against Defendant Bradley; (3) Plaintiff failed to set forth a plausible access to the courts claim; (4) Plaintiff's complaint did not lead to a plausible inference that his seven (7)-month placement in the SHU violated his Fifth Amendment due process rights; and (5) Plaintiff had not set forth a plausible Eighth Amendment claim regarding the denial of recreation. (Doc. No. 13.) The Court also denied without prejudice Plaintiff's motion to appoint counsel and granted him leave to file an amended complaint within thirty (30) days. (Id.)

Plaintiff filed his amended complaint (Doc. No. 15) and a second motion to appoint counsel (Doc. No. 16) on March 31, 2020. In his amended complaint, Plaintiff alleges that Defendant Kubicki had him placed in the SHU based on "false information." (Doc. No. 15 at 5, 8.) According to Plaintiff, Defendant Kubicki told him that Plaintiff's "people don't want you on the pound." (Id. at 5.) Plaintiff remained in the SHU for seven (7) months pending a "fictitious investigation" by Defendant Bodge. (Id.) Plaintiff avers that Defendant Bodge conspired with Defendant Kubicki to keep him in the SHU and denied him the right to "confront [his] accuser." (Id.) Plaintiff avers that while in the SHU, he was denied medical treatment that had already been approved, such as a visit to an orthopedist. (Id. at 8.) Plaintiff maintains he did not receive care for his "ripped [biceps] and injured shoulder" and that he was denied physical therapy and recreation. (Id.)

Plaintiff alleges further that Defendants Fuller and Stein conspired to deprive him of his right to access the courts. (Id. at 5.) Plaintiff maintains that Defendant Fuller removed "legal documents, [a civil action] writ, BP 8, 9, cop-outs[,] and pertinent documents" from his personal property, "show[ed] them to staff members[,] disregarded them[,] and never returned them." (Id.) Plaintiff avers that Defendant Fuller claimed to have given the documents to Defendant

3

Stein, the property officer. (Id.) According to Plaintiff, Defendant Stein failed to provide him a property slip invoice and did not pack all of Plaintiff's property when he was transferred to a new institution. (Id.) Plaintiff maintains that Defendant Bradley "knowingly allow[ed] his subordinates to function above the law with impunity." (Id. at 6.) He avers that Defendant Bradley was aware of the situation via several cop-outs [and] complaints documented and verbal." (Id.) Plaintiff suggests that Defendant Bradley "[transferred him] under false pretenses and for no reason put [in place] a management [variable] putting [him] in a USP when [he] was supposed to go to a medium [security facility]." (Id.)

Based on the foregoing, Plaintiff alleges violations of his First, Fifth, and Eighth Amendment rights, as well as several Bureau of Prisons ("BOP") policies. As relief, he seeks a hearing, an unbiased investigation, and damages. (Id. at 8.) Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of Plaintiff's amended complaint.

## II. LEGAL STANDARD

### A. Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See id.

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

4

§ 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the

5

light most favorable to the plaintiff. See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

### B. Bivens Action

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992). To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

## III. DISCUSSION

### A. Plaintiff's Complaint

#### 1. First Amendment Access to the Courts Claim

Plaintiff again alleges that Defendants Fuller and Stein violated his First Amendment right to access the courts by confiscating legal documents, including a "[civil action] writ," and not returning them to him. (Doc. No. 15 at 5.) It is well-settled that "prisoners have a constitutional right of access to the courts." See Bounds v. Smith, 430 U.S. 817, 821 (1977). "In order to state a claim of the denial of access to the courts, a prisoner such as [Plaintiff] must allege that his efforts to pursue a legal claim were hindered and he suffered an actual injury." Ross v. Clerk of Courts of Court of Common Pleas of Phila., 726 F. App'x 864, 865 (3d Cir. 2018) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)). "[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). A complaint raising an access to the courts claim "must describe the underlying claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" See Christopher v. Harbury, 536 U.S. 403, 416-18 (2002).

Plaintiff's amended complaint, as pled, still fails to set forth a plausible access to the courts claim. Plaintiff alleges that Defendants Fuller and Stein confiscated several legal documents, including a "[civil action] writ," but again fails to describe the claims he wished to raise that were set forth in those documents. See Heath v. Link, 787 F. App'x 133, 136 (3d Cir. 2019) (concluding same regarding legal materials). Moreover, Plaintiff has not alleged any facts about the merits of his underlying claims, let alone allege that he suffered an actual injury. See

Presbury v. Wetzel, 789 F. App'x 294, 295 (3d Cir. 2020) (concluding same). Accordingly, Plaintiff's access to the courts claim is again subject to dismissal.

### 2. Fifth Amendment Due Process Claims

#### a. Placement in the SHU

Plaintiff also suggests that his seven (7)-month placement in the SHU violated his Fifth Amendment due process rights. Inmates, however, have "no legitimate statutory or constitutional entitlement" to any particular custodial classification. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). The Due Process Clause protects liberty interests created by the laws or regulations of a state. See Sandin v. Conner, 515 U.S. 472, 483 (1995). These interests, however, "will be generally limited to freedom from restraint" that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See id. at 484. When deciding whether a protected liberty interest exists, courts "consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." See Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003). The determination of what is "atypical and significant" is based on the range of conditions an inmate "may reasonably expect to encounter as a result of his or her conviction." See Asquith v. Dep't of Corr., 186 F.3d 407, 412 (3d Cir. 1999). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (quoting Sandin, 515 U.S. at 486).

Plaintiff's amended complaint, as pled, again does not lead to a plausible inference that his placement in USP Canaan's SHU for seven (7) months imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." See Sandin, 515 U.S. at

484. Even if Plaintiff's placement in the SHU were based upon false information, such placement does not rise to the level of an atypical and significant hardship. See Smith, 293 F.3d at 653 (concluding that an inmate-plaintiff's allegation that a false disciplinary report resulted in his placement in disciplinary confinement for seven (7) months was not sufficient to constitute a due process violation). Thus, Plaintiff has not implicated a protected liberty interest. See Robinson v. Norwood, 535 F. App'x 81, 83-84 (3d Cir. 2013) (affirming that the inmate-plaintiff's placement in the SHU at USP Lewisburg did not violate his due process rights); Wilson v. Hogsten, 269 F. App'x 193, 195 (3d Cir. 2008) (concluding that the inmate-plaintiff's complaint that he was kept in the SHU during a ten (10)-month internal investigation was not a cognizable constitutional claim). Accordingly, Plaintiff's Fifth Amendment due process claim regarding his placement in the SHU is again subject to dismissal.[2]

### b. Deprivation of Personal Property

Plaintiff appears to suggest that Defendant Stein violated his Fifth Amendment rights by depriving him of all his personal property upon transfer. (Doc. No. 15 at 5.) The Fifth Amendment provides, in part, that no person shall be deprived of property without due process of law. See U.S. Const. amend. V. Due process claims for negligent deprivations of property, however, are barred by Daniels v. Williams, 474 U.S. 327, 328 (1986). The Third Circuit has held that an inmate fails to state a procedural due process claim regarding intentional deprivations of property when he is provided with a meaningful post-deprivation remedy regarding the loss of his property through an internal grievance procedure. See Mattis v.

---

[2] Plaintiff vaguely alleges that Defendant Bodge denied him the right to confront his accuser. (Doc. No. 15 at 5.) To the extent Plaintiff asserts a violation of his rights under the Sixth Amendment's Confrontation Clause, that right does not apply during prison disciplinary proceedings. See Morgan v. Dretke, 433 F.3d 455, 457 (5th Cir. 2005).

Dohman, 260 F. App'x 458, 461 (3d Cir 2008) (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)). Thus, "the relevant inquiry is whether an adequate post-deprivation remedy was available to [Plaintiff] to address the loss of his property." See Toney v. Sassaman, No. 4:11-cv-780, 2014 WL 1056826, at *11 (M.D. Pa. Mar. 18, 2014), aff'd, 588 F. App'x 108 (3d Cir. 2015). The BOP's Administrative Remedy Program "allows inmates to seek formal review of an issue relating to any aspect of his or her confinement." See id. The BOP "also has an administrative tort claims procedure whereby a federal inmate may file a claim with regard to his damaged or lost property." See id. Plaintiff's amended complaint does not allege that they procedures were not available to him. Accordingly, his Fifth Amendment claim regarding the deprivation of his property will be dismissed.

### 3. Eighth Amendment Claims

Plaintiff also asserts that his Eighth Amendment rights were violated because he was denied medical care and recreation during his incarceration in the SHU. (Doc. No. 15 at 8.) The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties upon prison officials to provide prisoners with the basic necessities of life, including food, clothing, shelter, sanitation, medical care, and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). It is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs. See Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 417-18 (3d Cir. 2000). To allege a deprivation of basic human needs, an inmate must allege a sufficiently serious objective deprivation and that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference. See Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

As an initial matter, Plaintiff has not set forth plausible claims concerning the denial of medical care and recreation because he fails to set forth facts suggesting that the named Defendants were personally involved in such denial. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (noting that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs"). With respect to Plaintiff's claim regarding the denial of recreation, while exercise is "one of the basic human necessities protected by the Eighth Amendment," see LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993), a temporary denial of exercise without medical effects is not a substantial deprivation. See Rodriguez v. Thomas, 299 F. Supp. 3d 618, 639 (M.D. Pa. 2018); see also French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985) (noting that lack of exercise rises to a constitutional violation only if the deprivation is such that "movement is denied [to the extent that] muscles are allowed to atrophy [and] the health of the individual is threatened"). In the instant case, Plaintiff asserts that he received no recreation while housed in the SHU for seven (7) months and was unable to "exercise [his] knees as [recommended] by [a USP] Allenwood therapist." (Doc. No. 15 at 8.) Plaintiff, however, again fails to allege that he suffered any adverse medical affects from the alleged deprivation of recreation. Accordingly, Plaintiff has failed to state a plausible Eighth Amendment claim regarding the denial of recreation.

With respect to Plaintiff's claim concerning the denial of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those [individuals who are] incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish a claim for the denial of medical care, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575,

11

582 (3d Cir. 2003). A prison official who knows of an inmate's need for medical care and intentionally refuses to provide it, delays it for non-medical reasons, or prevents the prisoner from receiving needed or recommended treatment acts with deliberate indifference. See Rouse, 182 F.3d at 197. In the instant case, however, Plaintiff fails to allege that Defendants knew of his need for medical care and refused to provide it. Accordingly, Plaintiff fails to state a plausible Eighth Amendment claim regarding the denial of medical care against Defendants.

### 4. Claims Against Defendant Bradley

Plaintiff again attempts to hold Defendant Bradley liable because of his participation in after-the-fact review of Plaintiff's grievances and administrative remedies concerning his placement in the SHU. As the Court previously explained to Plaintiff, however, inmates do not have a constitutional right to prison grievance procedures. See Lions v. Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of

12

an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998); Rode, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action). Consequently, any allegations asserted by Plaintiff in an attempt to establish liability against Defendant Bradley based solely upon the substance of his respective responses to Plaintiff's grievances or administrative remedies do not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (providing that the involvement in the post-incident grievance process is not a basis for liability); see also Brooks, 167 F. App'x at 925; Ramos, 2006 WL 2129148, at *3.

Plaintiff again suggests that Defendant Bradley is liable based upon his respective supervisory position, noting that his "subordinates are accountable to him especially when official or [professional] misconduct is at hand." (Doc. No. 15 at 6.) As the Court previously explained, however, supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." See Iqbal, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to Bivens and 42 U.S.C. § 1983: (1) "a supervisor may be personally liable under § 1983 [and Bivens] if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates'

13

violations"; and (2) policymakers may also be liable under § 1983 and Bivens "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." See Merring v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

As discussed in detail above, Plaintiff has failed to set forth a plausible claim regarding the alleged violation of his constitutional rights. It follows, therefore, that Defendant Bradley cannot be charged with having knowledge of and acquiescing in any such alleged violations by his subordinates. See A.M., 372 F.3d at 586. Moreover, Plaintiff fails to identify a policy that allegedly caused the violation of his constitutional rights. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). In the instant case, Plaintiff fails to identify the policy that allegedly caused the violations of his constitutional rights. Therefore, Plaintiff's amended complaint again fails to set forth a plausible supervisory liability claim against Defendant Bradley.

Finally, Plaintiff appears to suggest that Defendant Bradley violated his constitutional rights by having him transferred "under false pretenses." (Doc. No. 15 at 6.) Plaintiff maintains that Defendant Bradley "put a management variable [that caused Plaintiff to be placed] in a USP when [he] was suppose[d] to go to a medium [security facility]." (Id.) Plaintiff, however, "enjoys no right to any particular housing classification." See Turner v. Coupe, 655 F. App'x

14

47, 50 (3d Cir. 2016); see also Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (noting that the "Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement"). Accordingly, Plaintiff has again failed to set forth a plausible claim for relief against Defendant Bradley.

### 5. Civil Conspiracy Claim

Plaintiff alleges that Defendants entered a civil conspiracy to violate his constitutional rights. (Doc. No. 15 at 5-6.) To maintain an action for civil conspiracy, a plaintiff must show "both the deprivation of a constitutional right and the existence of a conspiracy to violate that right." See Wodarski v. Erie Office of Children & Youth Servs., No 10-292, 2012 WL 602933, at *4 (W.D. Pa. Feb. 23, 2012). Moreover, "[b]are conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). As addressed in detail above, the Court has concluded that Plaintiff has not stated plausible claims regarding the alleged violations of his constitutional rights. It follows, therefore, that Plaintiff's conspiracy claim fails. See Perano v. Twp. of Tilden, 423 F. App'x 234, 239 (3d Cir. 2011) (stating that "a conspiracy claim only arises when there has been an actual deprivation of a right"). Moreover, Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation, which is insufficient to state a claim. Accordingly, Plaintiff's civil conspiracy claim will also be dismissed.

### 6. Claims Regarding Violations of BOP Policies

Plaintiff also suggests that Defendants violated his rights by violating several BOP policies. (Doc. No. 15 at 4.) For example, he contends that Defendant Fuller violated BOP

15

policies concerning mail and that Defendant Stein violated BOP policies concerning inmate property. (Id. at 5.) He also suggests that Defendant Bodge violated BOP policies by not interviewing him during the investigation. (Id.) Even if Defendants did violate BOP policies, however, such violations are not cognizable under Bivens. See Bullard v. Scism, 449 F. App'x 232, 235 (3d Cir. 2011) (noting that "even if the [BOP's] regulations were violated, its violation is not actionable"). Accordingly, Plaintiff's claims based on violations of such policies will be dismissed.

B. **Leave to Amend**

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief may be granted. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). In the instant case, the Court concludes that it would be futile to permit Plaintiff to file a second amended complaint because he has already been granted an opportunity to cure the deficiencies identified in his initial complaint and his amended complaint failed to cure such deficiencies.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's amended complaint (Doc. No. 15) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff will not be provided leave to file a second amended complaint. The Court will, therefore, deny Plaintiff's motion to appoint counsel. (Doc. No. 16.) An appropriate Order follows.